UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUETTS

CIVIL ACTION No. 25-cv-12819-RGS

L.K., by her parents MARISA HOWARD-KARP
and ISADORA HOWARD-KARP

v.

THE RENFREW CENTER OF MASSACHUSETS, LLC

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS

January 12, 2026

STEARNS, D.J.

This suit is brought by Marisa Howard-Karp (Marisa) and Isadora Howard-Karp on behalf of their daughter, plaintiff L.K., a seventeen-year-old who is deaf and has dysgraphia, a learning disability that affects "her ability to process and produce written text." Compl. [Dkt #1] ¶¶ 1, 10. L.K.'s parents allege that The Renfrew Center of Massachusetts, LLC (The Renfrew Center), which offers treatment to individuals with eating disorders, refused to offer reasonable accommodations to L.K. in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12182, *et seq.* (Count I); the Massachusetts Public Accommodation Law, Mass. Gen. Laws ch. 272, § 98 (Count II); and the Massachusetts Equal Rights Act, Mass. Gen. Laws ch. 93,

§ 103 (Count IV).[1]  Compl. ¶¶ 73-74, 80, 88.[2]  The Renfrew Center moves to dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  For the following reasons, the court denies the motion to dismiss.

## BACKGROUND

The following facts are drawn from the Complaint and viewed in the light most favorable to L.K. as the nonmoving party.  In 2024, L.K.

---

[1] The ADA prohibits discrimination against any person because of disability and imposes a positive obligation on an ADA defendant to provide a plaintiff with reasonable accommodations.  *Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 15 (1st Cir. 1997).  Under the ADA, unlawful discrimination includes providing an "unequal" benefit to disabled individuals or providing such individuals a benefit that is "different or separate from that provided to other individuals, unless such action is necessary to provide" a benefit "that is as effective as that provided to others."  42 U.S.C. § 12182.

Massachusetts law likewise forbids discrimination because of a disability.  The Massachusetts Public Accommodation Law prohibits "distinction, discrimination or restriction on account of . . . deafness, blindness or any physical or mental disability . . . relative to the admission of any person to, or his treatment in any place of public accommodation."  Mass. Gen. Laws ch. 272, § 98.  Similarly, the Massachusetts Equal Rights Act requires that "person[s] within the commonwealth, regardless of handicap . . . shall, with reasonable accommodation, have the same rights as other persons . . . to the full and equal benefit of all laws and proceedings for the security of persons and property, including . . . the rights secured under Article CXIV of the Amendments to the Constitution."  Mass. Gen. Laws ch. 93, § 103.

[2] The Complaint also included an additional Count III, alleging that The Renfrew Center violated Article 114 of the Amendments to the Massachusetts Constitution, which L.K.'s parents subsequently agreed to dismiss.  Pl.'s Opp'n to Def.'s Mot. to Dismiss. [Dkt #14] at 1.

participated in two programs at The Renfrew Center: a partial hospitalization program from January through March and an outpatient program from March through April.³ *Id.* ¶¶ 14, 16. Both programs consisted of individual, family, and group therapy, all of which took place in person.⁴ *Id.* ¶¶ 15, 17, 24. The Renfrew Center provided L.K. with an ASL interpreter for all programming during this time. *Id.* ¶ 24.

In December of 2024, Marisa emailed The Renfrew Center, requesting that it evaluate L.K. for additional treatment. *Id.* ¶ 27. In its response, The Renfrew Center outlined the accommodations that it would offer to L.K. if she were to return to the outpatient program.⁵ *Id.* ¶ 29. The proposed accommodations would include an in-person ASL interpreter for L.K. during individual sessions but not group sessions. *Id.* Instead, the Center proposed that L.K. participate remotely in group sessions using a Video Remote

---

³ The Renfrew Center's partial hospitalization program takes place on five days a week for six hours each day, while its outpatient program takes place on three days a week for three hours each day. *Id.* ¶¶ 15, 17.

⁴ The Renfrew Center's group sessions include both therapy and communal meals: "[P]atients eat and interact together with a therapist present to support them," and they "receive support and detailed nutritional education through oral communication from treating professionals." *Id.* ¶ 20.

⁵ This correspondence took place between Marisa and Christen Murray, a member of The Renfrew Center's residential admissions team. *Id.* ¶¶ 27, 29.

3

Interpretation (VRI) service, an online platform on which an offsite interpreter would use a camera or videophone to provide ASL interpretation to L.K. *Id.* ¶¶ 35-36. Marisa, together with L.K.'s social worker and a referral specialist from the Massachusetts Commission for the Deaf, corresponded with The Renfrew Center in the weeks that followed[6] explaining their view that L.K.'s needs could only be met with in-person ASL translation.[7] *Id.* ¶¶ 39-40, 47.

In February of 2025, The Renfrew Center revised the proposed accommodations with respect to group sessions, substituting the VRI accommodation with an automated virtual platform. *Id.* ¶¶ 48-49. The substitution would still require L.K. to participate in group sessions remotely, using a platform that would provide closed captioning as well as a digital chat function for communicating with the group. *Id.* ¶ 50. The Center cited the costs of VRI as the reason for the substitution. *Id.* ¶ 55.

---

[6] This correspondence included emails from The Renfrew Center's assistant vice president, Jillian Hartman, and its vice president of outpatient operations, Lori Ciotti. *Id.* ¶¶ 35, 41.

[7] In January of 2025, The Renfrew Center evaluated L.K. for eating disorder treatment and recommended that she "receive nine hours per week of treatment, comprised of two hours of individual therapy and seven hours of group therapy sessions" for a period lasting between two and four months. *Id.* ¶¶ 45-46. The evaluation was conducted using an ASL interpreter. *Id.* ¶ 45.

L.K.'s parents contend that this new accommodation would not provide L.K. with equal access to the outpatient program. *Id.* ¶ 51. As stated in the Complaint:

> Captioning cannot interpret or voice L.K.'s statements in ASL for the other participants in the virtual therapy sessions. Reliance on automatic captioning would require L.K. to quickly read and process everything said by members of the group on the caption panel and also type everything that she wanted to say in the online chat function, posing significant challenges due to her Dysgraphia. With automatic captioning and chats as her only means of communicating, L.K. would not be able to equally participate in or benefit from the content the treatment professional provides or conversations with fellow participants. L.K. could not join in and respond in a timely manner, isolating and disconnecting her from her peers, and decreasing her chances of success in the program.

*Id.* ¶¶ 52-53.

The Complaint alleges that, in refusing to provide an ASL interpreter for group sessions, The Renfrew Center violated the ADA, the Massachusetts Public Accommodation Law, and the Massachusetts Equal Rights Act. *Id.* ¶¶ 73-74, 80, 88. L.K.'s parents seek various forms of relief: a court declaration that The Renfrew Center has violated the ADA and state law, an injunction against any continuing discriminatory conduct, compensatory and punitive damages, and reasonable attorney's fees and costs. In its motion to dismiss, The Renfrew Center argues (in vague terms) that "plaintiff's allegations rest

solely on subjective characterizations and conclusory descriptions of alleged general scenarios." Mem. in Supp. of Mot. to Dismiss [Dkt # 12] at 4.

## DISCUSSION

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two basic principles guide the court's analysis. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. A claim is facially plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. If the allegations in the complaint are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," the complaint will be dismissed. *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

Whether The Renfrew Center's proposed accommodations of L.K.'s disability were reasonable is a determination of fact that cannot be resolved on the barebones of the pleadings before the court. The burden of showing

that a requested accommodation is reasonable rests with the plaintiff in an ADA suit. *See Mulloy v. Acushnet Co.*, 460 F.3d 141, 147 (1st Cir. 2006). Under the circumstances of the case, it is difficult to see how L.K.'s parents could meet that burden without the benefit of discovery and, most likely, expert testimony on whether The Renfrew Center's proposals are sufficiently tailored to L.K.'s needs and satisfy the ADA's reasonableness requirement. In L.K.'s case, this issue can only be addressed in the context of a summary judgement motion, or if necessary, at a trial. *See Delgado-Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, 128 (1st Cir. 2017) (a plaintiff must show at the summary judgment stage, that a requested accommodation under the ADA is facially reasonable; where plaintiff fails to show such reasonableness, summary judgment for the defendant is appropriate).[8]

## ORDER

For the forgoing reasons, The Renfrew Center's motion to dismiss is <u>DENIED</u>.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[8] Whether a defendant's counteroffer of an accommodation was equally reasonable under the circumstances would obviously figure in a factfinder's assessment of whether a plaintiff had met her preponderance of the evidence burden on this issue.